IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PATRICIA A. CHRISCOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13CV788 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Patricia A. Chriscoe, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on March 4, 2010, alleging a disability onset date of March 1, 2008. (Tr. at 191-202.)[1] Her applications were denied initially (Tr. at 81-106, 131-35) and upon reconsideration (Tr. at 107-30, 137-45). Thereafter, Plaintiff

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #s 10-11].

requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 146-47), which she attended on March 15, 2012, along with her attorney (Tr. at 9). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 19), and on July 23, 2013, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-3).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: seizure disorder, mood disorder/major depressive disorder, history of substance abuse/alcohol dependence, hypertension, and right-sided axonal neuropathy. (Tr. at 11.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad postural, mental, and environmental restrictions. (Tr. at 13.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to her past relevant work. (Tr. at 17.) However, he concluded at step five that, given Plaintiff's age, education, work experience,

5

Case 1:13-cv-00788-LCB-JEP   Document 18   Filed 07/08/15   Page 5 of 11

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: seizure disorder, mood disorder/major depressive disorder, history of substance abuse/alcohol dependence, hypertension, and right-sided axonal neuropathy. (Tr. at 11.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad postural, mental, and environmental restrictions. (Tr. at 13.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to her past relevant work. (Tr. at 17.) However, he concluded at step five that, given Plaintiff's age, education, work experience,

and RFC, Plaintiff could perform other jobs available in the community and therefore was not disabled. (Tr. at 18-19.)

Plaintiff now argues that the ALJ failed to: (1) discuss whether Plaintiff's impairments meet or equal Listing 11.14 for peripheral neuropathy, (2) properly evaluate Plaintiff's credibility when assessing her RFC, and (2) properly consider the disability determination of another agency, that is, the North Carolina Department of Health and Human Services' ("NCDHHS") approval of Plaintiff's Medicaid application in December 2011. For the reasons discussed below, the Court concludes that the ALJ's decision in this case did not adequately address the disability determination of another agency as required by Social Security Ruling ("SSR") 06-03p. Because remand is required on this basis, the Court need not consider the additional issues raised by Plaintiff at this time.

As provided at 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06-03p, 2006 WL 2329939, at *7. Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 C.F.R. §§ 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Id. at *6. Moreover, "the adjudicator should

6

Case 1:13-cv-00788-LCB-JEP   Document 18   Filed 07/08/15   Page 6 of 11

explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7.

Here, Defendant contends that, because "the record does not contain a disability decision by another governmental agency as contemplated by the regulations, . . . the ALJ committed no error by omitting Plaintiff's receipt of Medicaid benefits from the decision." (Def.'s Br. [Doc. #16] at 10.) In support of this contention, Defendant argues that evidence that an individual may have received Medicaid benefits at some time is not sufficient, standing alone, to indicate the existence of another agency decision entitled to consideration. Defendant further contends that Plaintiff's Medicaid card does not constitute evidence of a disability determination by another agency, and that the record is insufficient to invoke the requirements of SSR 06-03p where "[t]here is no record of any evidence considered by [NCDHHS]" and "no record of the reasoning behind a decision to grant Plaintiff Medicaid benefits. (Def. Br. at 10 (citing Lafferty v. Astrue, 559 F.Supp.2d 993, 1010 (W.D. Mo. 2008) (noting that the only evidence in the record regarding any other agency decision was a copy of the claimant's Medicaid card, that there was no evidence relied upon by Medicaid that was ignored by the ALJ, and that whether the claimant meets SSA eligibility requires is an inquiry different that a state's Medicaid eligibility requirements), Davis v. Colvin, 3:13-CV-189-RJC-DSC, 2014 WL 868709, at *2 (W.D.N.C. Mar. 5, 2014) (unpublished) (holding that the claimant's testimony during the hearing, absent any evidence in the record of a Medicaid determination, was not evidence of a determination by Medicaid or DMA, but further holding that the ALJ did consider opinion evidence "in accordance with the requirements of SSR06-3p" (internal brackets omitted)); McDowell v. Astrue, No.

7

3:11CV652-RJC-DSC, 2012 WL 4499336, at *3 (W.D.N.C. Aug. 2, 2012) (unpublished) (holding that a home health services document in the record was not sufficient evidence of another agency determination, absent any evidence of any decision by Medicaid or any other agency finding Plaintiff disabled, and further holding alternatively that "[a]ssuming *arguendo* that the record contained evidence of a disability decision by Medicaid or DMA, the ALJ adequately considered such evidence").)

In contrast to the cases cited by Defendant, the record in the present case contains Plaintiff's Notice of Application Approval from the Chatham County, North Carolina Department of Social Services and a copy of Plaintiff's Medicaid Identification Card, both of which are dated within the disability period in question. (Tr. at 211.) The Application Approval notes that her "Aid Program Category" is MAD, an apparent reference to Medicaid Aid to the Disabled. At the hearing, the ALJ further questioned Plaintiff about her Medicaid status, confirming that Plaintiff got "a decision in the mail where [the NCDHHS] found [her] disabled under the same standard [as the SSA] really but just for Medicaid purposes." (Tr. at 36.) Indeed, the ALJ, not the Plaintiff, voiced the "same standard" language when referring to the Medicaid decision. Although the above evidence clearly put the ALJ on notice that another agency had found Plaintiff disabled, the ALJ made no effort to obtain a copy of that decision or further consider Plaintiff's Medicaid approval when evaluating her case. Compare Woodall v. Colvin, No. 5:12-CV-357-D, 2013 WL 4068142, at *5, n.3 (E.D.N.C. Aug. 12, 2013) (unpublished) (instructing the Commissioner to obtain a copy of the claimant's previously-referenced Medicaid decision on remand). In fact, the ALJ omitted any mention of Plaintiff's Medicaid status from his decision, and unlike the cases

8

cited by Defendant, there is no basis for the Court here to alternatively conclude that the ALJ did adequately consider this evidence.

In considering this issue, the Court also notes that several months after the ALJ denied Plaintiff's disability claims, the Fourth Circuit issued its decision in <u>Bird v. Commissioner of Social Sec. Admin.</u>, 699 F.3d 337 (4th Cir. 2012), clarifying the Commissioner's obligations under 20 C.F.R. § 404.1504 and SSR 06-03p. Specifically, the Fourth Circuit concluded that "in making a disability determination, the SSA must give <u>substantial weight</u> to [another agency's] disability rating," and "an ALJ may give less weight to [that agency's] disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate." <u>Bird</u>, 699 F.3d at 343 (emphasis added). Although <u>Bird</u> involved a decision by the Veterans Administration ("VA") rather than the NCDHHS, subsequent case law within the Fourth Circuit has explicitly extended the holding in <u>Bird</u> to Medicaid decisions, noting that both the Medicaid and VA disability programs share markedly similar standards and requirements with the DIB and SSI programs at issue here. <u>See, e.g.</u>, <u>Harvey v. Colvin</u>, No. 5:13CV00074, 2014 WL 4093483, at *5 (W.D. Va. Aug. 18, 2014) (unpublished) ("[T]he state agency's determination that [claimant] is disabled for purposes of Medicaid may provide relevant evidence that the Commissioner should consider."); <u>Baughman v. Colvin</u>, No. 5:13-CV-143-FL, 2014 WL 3345030, at *7-8 (E.D.N.C. July 8, 2014) (unpublished) (remanding case for failure to explain consideration given to Medicaid decision, where "[a]pplying the same regulations governing SSA determinations, the NCDHHS determined that Claimant was limited to performing sedentary work, which resulted in a directed finding of disabled"); <u>Allen v. Colvin</u>, No. 2:12-

CV-29-FL, 2013 WL 3983984, at *2 (E.D.N.C. Aug. 1, 2013) (unpublished) (remanding to allow SSA to "give appropriate consideration to the NCDHHS Medicaid Determination"); Caraballo v. Colvin, No. 4:12-CV-125-D, 2013 WL 3197070, at *3-4 (E.D.N.C. June 21, 2013) (unpublished) ("Failure to discuss a Medicaid decision requires remand."); Gaskins v. Colvin, No. 3:12-CV-81, 2013 WL 3148717, at *3-4 (N.D. W. Va. June 19, 2013) (unpublished) (holding that even if the evidence of the Medicaid decision is "conclusory," "the Social Security Administration's own internal policy interpretation rulings affirmatively require[] the ALJ to consider evidence of a disability decision by another governmental agency," and these regulations "do not limit the required review of other agency's disability determinations to cases where the decision is substantive" because "to the extent that Medicaid decisions employ the same standards as the Social Security Administration uses in disability determinations, such decisions are probative in situations such as the instant one where an agency has applied the same rules yet reached the opposite result from the Social Security Administration" (internal quotations and brackets omitted)).

In the present case, as in Bird, the previous agency decision "resulted from an evaluation of the same condition[s] and the same underlying evidence that was relevant to the decision facing the SSA." Bird, 699 F.3d at 343. In fact, as noted above, the ALJ stated as much during Plaintiff's hearing. (Tr. at 36.) Nevertheless, the ALJ failed to even mention Plaintiff's Medicaid award in his decision. Because, based on the record presented, the Court cannot determine whether the ALJ considered and discounted the evidence on which the Medicaid decision was based, the ALJ's failure to consider the award of Medicaid benefits to the Plaintiff cannot be said to constitute harmless error. See Grogan v. Barnhart, 399 F.3d

1257, 1263 (10th Cir. 2005) (citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."); Newman v. Colvin, No. 5:12CV739-BO, 2013 WL 6501165 (E.D.N.C. Dec. 11, 2013). Accordingly, this case merits remand under 42 U.S.C. § 405(g). When reviewing the case on remand, the ALJ should also consider each of Plaintiff's additional allegations of error.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED under sentence four of 42 U.S.C. § 405(g) for further consideration of Plaintiff's Medicaid decision in accordance with the evidence and procedures discussed in this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #13] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 8th day of July, 2015.

                                                                        /s/ Joi Elizabeth Peake
                                                                         United States Magistrate Judge